Filed 10/5/20  P. v. Hughes CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>SEMEGREIAN HUGHES,<br><br>　　　Defendant and Appellant. | A158260<br><br>(San Francisco City and County Super. Ct. Nos. 18001036 / 228650) |

　　　After Semegreian Hughes stole a pair of sunglasses from an eyewear shop and struck the 69-year-old shop owner on the head, a jury convicted him of second-degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)),[1] assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)), and misdemeanor elder abuse (§ 368, subd. (c)).  Hughes contends that his right to a speedy trial was violated, the trial court erroneously admitted evidence that he had shoplifted on two prior occasions, and the record contains insufficient evidence to support his misdemeanor elder abuse conviction.  We conclude his contentions lack merit and affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

1

One rainy day, Hughes opened the door to an optometry shop in San Francisco, stepped inside, and grabbed a pair of sunglasses from a display in the front window. The shop owner, Robert K., was working in the back of the store at the time and asked Hughes if he could help him find something. Hughes responded that he had found what he was looking for and left the store without paying for the sunglasses. When Robert tried to catch up to him, Hughes turned and hit him on the side of the head, knocking him to the ground. Christine S. witnessed the incident and called 911.

At trial, Hughes argued that the prosecution could not establish the elements of robbery because, in light of his mental disorder, he did not intend to permanently deprive Robert of his property. The parties stipulated that Hughes suffered a traumatic brain injury in 1999. Hughes also presented evidence that he suffered from transitory periods of psychosis in which he experienced hallucinations and delusions, and that he had been diagnosed with schizophrenia, bipolar disorder, and schizoaffective disorder.

However, the prosecution argued that Hughes behaved rationally when he walked into the shop, responded to Robert's question, and struck Robert when he tried to retrieve the sunglasses. The prosecution also put on evidence that Hughes had shoplifted in the past and argued that the prior incidents showed that Hughes similarly intended to steal when he took the sunglasses.

With respect to the elder abuse charge, Hughes contended that he could not have known that Robert was over the age of 65 because their interactions occurred in a matter of seconds.

## DISCUSSION

### A.

Hughes asserts that the trial court abused its discretion in granting the prosecution's motion to continue his trial until Christine was available to testify, in violation of his right to a speedy trial under section 1382. However, Hughes does not dispute that he failed to preserve this issue for appeal by failing to object below. As a result, he has forfeited his challenge. (See *People v. Seaton* (2001) 26 Cal.4th 598, 633.)

### B.

Hughes contends that the trial court erred in allowing the prosecution to introduce evidence of two prior shoplifting incidents. Applying the abuse of discretion standard (*People v. Harris* (2013) 57 Cal.4th 804, 841 (*Harris*)), we find no error.

The prosecution offered evidence that Hughes had shoplifted from stores in San Francisco in 2013 and 2017. The prosecution alleged that in 2017, Hughes took multiple items from a CVS store without paying for them, gave some of the items back when confronted by a store guard, and punched the guard in the face when he tried to recover the remaining items just outside the store. When the guard called the police, Hughes tried to take his phone from him. After the police told him he was under arrest for robbery, Hughes told them, "I got some money in my pocket." Hughes subsequently acknowledged that the victim was a guard, but told the police that once he exited the store with the items, the items belonged to him, and not to the victim.

In the 2013 incident, the prosecution alleged that Hughes took four wallets from a Macy's store and left without paying. When several

guards confronted him just outside the store, Hughes handed them his backpack and said, "They're in there[.]" When a guard asked him why he stole the wallets, Hughes responded, "It's a bad habit."

Evidence that a person committed a crime is generally inadmissible to prove that the person has a criminal propensity or disposition. (Evid. Code, § 1101, subd. (a).) But evidence of uncharged crimes may be admissible to prove other material facts, such as a person's identity or intent. (*Harris, supra*, 57 Cal.4th at p. 841; Evid. Code, § 1101, subd. (b).) Compared to other permissible uses of prior act evidence, only the " 'least degree of similarity' " between the prior act and the charged offense is required to prove intent. (*Harris, supra*, 57 Cal.4th at p. 841.) "[T]o be admissible to prove intent, the uncharged conduct must be sufficiently similar" to support an inference that the defendant likely had the same intent in both instances. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*))

Here, the prior shoplifting incidents were admissible on the question of Hughes's intent. Hughes contended that, as a consequence of his 1999 brain injury and his psychotic episodes, he truly believed the sunglasses were his, and he therefore did not intend to permanently deprive Robert of his property. The jury could rely on the prior offenses to conclude that Hughes understood the nature of his actions and was capable of forming the requisite intent, even after his brain injury. (See *Ewoldt, supra* 7 Cal.4th at p. 394, fn. 2 ["in a prosecution for shoplifting in which . . . the defendant left the store without paying for certain merchandise, the defendant's uncharged similar acts of theft might be admitted to demonstrate that he or she

4

did not inadvertently neglect to pay for the merchandise, but rather harbored the intent to steal it"].)

We reject Hughes's assertion that the prior incidents were too dissimilar. Like the robbery here, the two prior incidents involved Hughes taking items from stores in San Francisco and walking out without paying. In both the CVS incident and the instant offense, Hughes punched the victim in the head when the victim attempted to recover the stolen property. The prior offenses were sufficiently similar to prove intent. (See *People v. Lewis* (2001) 25 Cal.4th 610, 637 (*Lewis*) [two robberies were sufficiently similar where defendant took wallets from victims by force in both incidents].) Further, as the trial court instructed, the jury was free to consider any dissimilarities in evaluating the evidence. (See CALCRIM No. 375.)

In addition, we disagree with Hughes's contention that the trial court should have excluded the prior acts because they were more prejudicial than probative. (See Evid. Code, § 352.) The facts of the prior offenses were not particularly inflammatory. (See *Harris*, *supra*, 57 Cal.4th at p. 842.) Although Hughes asserts that the evidence improperly suggested to the jury that he has a disposition as a thief, the trial court instructed the jury that it could not rely on the evidence to conclude that Hughes has a bad character. (See CALCRIM No. 375.) We presume the jury followed the instructions. (*Harris*, *supra*, 57 Cal.4th at p. 842.)

Hughes is mistaken that the prosecutor improperly described to the jury the applicable burden of proof regarding the prior incidents. First, Hughes forfeited any claim of error on this ground by failing to object. Second, the prosecutor's argument was consistent with the trial

5

court's instruction and the applicable law that the jury may consider prior acts "only if the conduct has been proven by a preponderance of the evidence." (*People v. Leon* (2015) 61 Cal.4th 569, 597; see also CALCRIM No. 375.)

## C.

Hughes argues that the record contains insufficient evidence that he knew, or reasonably should have known, that Robert was 65 years of age or older for purposes of his elder abuse conviction. (See § 368, subds. (c), (g).) We disagree.

To determine whether the record contains sufficient evidence to support the jury's finding, " 'we examine the entire record in the light most favorable to the prosecution, presuming in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence[.]' " (*People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 87.)

Substantial evidence supported the jury's finding here. As Hughes walked into the shop, he was facing the 69-year-old Robert, who was only 15 to 20 feet away. They spoke briefly to each other in the store. The jury was also shown photographs of Robert at the time of the offense and was able to observe Robert when he testified at the time of trial. The jury could have reasonably concluded from this evidence that Hughes should have known that Robert was over 65 years old. Hughes argues otherwise, but he is asking us to reweigh the evidence, which we cannot do. (*People v. Riley* (2015) 240 Cal.App.4th 1152, 1165-1166.)

### DISPOSITION

The judgment is affirmed.

6

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

NEEDHAM, J.

A158260